# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIA ALFANO and FRANK ALFANO, Husband & Wife, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 07-1297 ) |
| CITY OF SPRING VALLEY, ILLINOIS, an Illinois Local Governmental Entity, JAMES NARCZEWSKI, Mayor of the City of Spring Bay in His Individual Capacity, LENA MAUTINO, Individually and JOHN R. WIDMAN d/b/a Widman Excavating, Individually, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Now before the Court is Defendant City of Spring Valley, Illinois's ("Spring Valley") and Defendant James Narczewski's ("Narczewski") Motion for Summary Judgment [#64]. For the reasons set forth below, Spring Valley's and Narczewski's Motion is GRANTED IN PART and DENIED IN PART.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343, as the claims asserted in the Complaint present federal questions under the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"). This Court has supplemental jurisdiction over the claims asserted under Illinois state law pursuant to 28 U.S.C. § 1367, as they are so related to the claims within the Court's federal question jurisdiction that they form part of the same case or controversy.

1

**BACKGROUND**

Plaintiffs Maria Alfano and Frank Alfano (collectively "Alfanos") are husband and wife, and reside in Spring Valley, Illinois. In 2007, Maria Alfano was the owner of a building containing rental apartments located at 118 W. St. Paul Street, Spring Valley, Illinois. Frank Alfano assisted his wife in the management of her building. Frank Alfano's niece, Defendant Lena Mautino[1] ("Mautino"), owned the lot and building immediately next door, at 116 W. St. Paul Street. The Alfanos' and Mautino's buildings shared a common wall in one small area toward the back of the buildings. Mautino's property consisted of her building and adjacent empty lots. On April 23, 2007, James Clinard ("Clinard"), the engineer hired by Spring Valley, visited Mautino's building and issued a letter explaining that her building shared a common wall with the Alfanos' building, and that portions of her building were in danger of collapse.[2] On April 24, 2007, Mautino had her building torn down in order to operate a beer garden on her property. In the time leading up to the demolition, Mautino approached Narczewski, the mayor of Spring Valley and Liquor Commissioner for the city, to get a liquor license to operate the beer garden business once her building was torn down.[3]

---

[1] In the Alfanos' Response to Defendants' Motion for Summary Judgment, they state that Mautino is uninsured and will be dismissed by the Plaintiffs.

[2] Clinard apparently visited Mautino's building so that Spring Valley could obtain an engineering report in order to comply with an EPA requirement involving the demolition of buildings containing asbestos.

[3] Mautino is the wife of Illinois State Representative Frank Mautino. The Alfanos suggest that Narczewski, as politically active, viewed an association with Mautino to be "advantageous to him given the political office of [Mautino's] husband Representative Mautino." Complaint ¶ 12.A.

Mautino and John R. Widman d/b/a Widman Excavating[4] ("Widman") contracted for the latter to tear down Mautino's building and excavate the premises of the remains of the building. The excavation was not approved by Spring Valley's Building Commissioner, and Mautino never obtained a building permit as required by City ordinance. Following the demolition of Mautino's building, the wall supporting the Alfanos' building was damaged, making the building uninhabitable. Narczewski called the Alfanos' attorney, Thomas Tonozzi ("Tonozzi"), to inform Tonozzi that the Alfanos needed to repair their building and that they would have problems if they attempted to reoccupy it while in need of repair. The building was in a condition that required it to be repaired or demolished.

Mautino was issued a liquor license for operation of the intended beer garden at 116 W. St. Paul Street.[5] In the summer of 2007, Spring Valley commenced an ordinance violation action against the Alfanos. Spring Valley and Maria Alfano entered into a settlement agreement on July 8, 2008, which provided that the Alfanos had 60 days to repair or demolish the building to bring it up to code. Spring Valley filed a Motion to Enforce Settlement Agreement and Impose Penalties after the 60 days had expired and Maria Alfano had still not repaired or demolished the building. Her building was eventually demolished over a year after Mautino's building was demolished. On November 6, 2007, the Alfanos filed their Complaint. They allege, under Section 1983, a deprivation of their Fourth Amendment guaranty against unreasonable seizures,

---

[4] Widman and Plaintiffs reached a settlement and so Widman was dismissed as a defendant on October 19, 2009.

[5] Mautino was first erroneously issued a liquor license though she was not a resident of Spring Valley. Because she was a corporation doing business in Spring Valley, the license was correctly reassigned to the corporation. Mautino's lot was not used again after August 2007.

a deprivation of property without substantive due process of law as guaranteed by the Fourteenth Amendment, and a violation of Equal Protection based upon a "class of one" theory. They additionally allege that Narczewski is liable as a co-conspirator with Mautino, Spring Valley is liable based on respondeat superior for Narczewski's intentional/willful and wanton conduct while acting as mayor, and Spring Valley is responsible for payment of compensatory damages and attorney's fees for Narczewski acting in the scope of his employment pursuant to the Illinois Local Governmental Tort Immunity Act. Defendants Spring Valley and Narczewski have now moved for summary judgment. The matter is fully briefed, and this Order follows.[6]

## DISCUSSION

Summary judgment should be granted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139,

---

[6] Defendants filed an additional Argument Regarding Plaintiffs' Improper Responses to Uncontested Facts. Dkt 71. In it, Defendants contest the manner in which Plaintiffs responded to the Uncontested Facts of Defendants' Motion for Summary Judgment, stating that the Court should deem the facts admitted. Though Plaintiffs did not closely follow Local Rule 7.1(D)(2)(b)(2), the Court will not simply deem those facts admitted. The parties have sufficiently discussed the facts so that the Court can properly address their arguments.

1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir. 1995). Finally, where a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

## I. Plaintiffs' Section 1983 Claims

Section 1983 imposes liability where a defendant acts under color of a state law and the defendant's conduct violated the plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. Where Section 1983 liability is based upon a conspiracy theory, the plaintiff must show: 1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and 2) those individual(s) were "willful participants in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (citing *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998)); *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Spencer v. Ill. Cmty Action Ass'n*, 51 F. App'x. 973, 975 (7th Cir.

5

2002).[7] Here, the Alfanos premise their Section 1983 claims on the alleged deprivation of their guaranty of the Fourth Amendment against unreasonable seizures, and the alleged deprivation of their right to equal protection of the laws.

### A. Fourth Amendment Unreasonable Seizure

In their Complaint, the Alfanos allege that they were deprived the Fourth Amendment guaranty against unreasonable seizure as a result of Narczewski's and Mautino's alleged agreement to suspend enforcement of the relevant Spring Valley building code provisions and liquor ordinances. They contend that the resulting damage to their building amounts to a seizure under the Fourth Amendment, and cite cases which provide for such a conclusion. *See Soldal v. Cook County*, 506 U.S. 56, 61, (1992) (reiterating that a Fourth Amendment seizure occurs when "there is some meaningful interference with an individual's possessory interests in that property," and holding that state actors' physical removal of the owners' mobile home was sufficient to allege a seizure for purposes of Section 1983); *Pepper v. Village of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005) (permanent taking of plaintiff's television and damage to her

---

[7] Initially, the Alfanos argue that because Narczewski was the "moving party" in obtaining the agreement with Mautino to suspend enforcement of the City of Spring Valley liquor ordinances and building code provisions, a different set of legals standards apply than the joint action/conspiracy cases cited by Defendants. The Alfanos cite cases which explain that a private actor's conduct satisfies the state action requirement of the Fourteenth Amendment where the state "effectively directs, controls, or encourages the actions of a private party." *Wade v. Byles*, 83 F.3d 902, 904-05 (7th Cir. 1996) (explaining that conduct which satisfies state action under the Fourteenth Amendment necessarily satisfies Section 1983's under color of state law requirement); *see also Proffitt v. Ridgway,* 279 F.3d 503, 510 (7th Cir. 2002) (Ripple, J., concurring in part and dissenting in part); *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999). The Alfanos' citations do not appear to present entirely different legal standards, but rather are just another way of stating that there must be action under color of state law where a private individual played a role in the alleged constitutional deprivations.

couch amounted to a seizure under the Fourth Amendment); *and Freeman v. City of Dallas*, 242 F.3d 642, 658 (5th Cir. 2001) (seizure and demolition of plaintiff's apartment buildings following city's condemnation amounted to Fourth Amendment seizure). The Court finds that the Alfanos' claim is more accurately a claim under the Fourth Amendment, rather than one under the substantive due process clause of the Fourteenth Amendment.

In their Motion for Summary Judgment and Reply, Defendants did not address whether the Alfanos' Fourth Amendment rights were violated. Instead, Defendants repeated the argument that summary judgment should be granted on the Alfanos' Fourteenth Amendment due process claim where it is predicated on deprivation of a state-created property interest, and they could not show either a violation of some other substantive constitutional right or that their state law remedies are inadequate. MSJ, p. 11; Reply, p. 29. The Magistrate Judge advised in his Report & Recommendation of September 3, 2008, that a substantive due process claim may not be maintained where a specific constitutional provision protects the right allegedly violated. Based upon the Court's finding that the Alfanos' claim more accurately falls within the Fourth Amendment, their substantive due process claim is foreclosed. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1017 (7th Cir. 2000) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)) (stating that when a specific constitutional provision protects the right allegedly infringed, substantive due process should not be called upon); *Jewett v. Anders*, 521 F.3d 818, 827 n.9 (7th Cir. 2008) (same); *Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007) (same). Defendants' failure to address Plaintiffs' Fourth Amendment claim means that they have conceded that there is a material issue of fact which requires resolution at trial.

Although the parties' material dispute over whether the Alfanos were deprived of their

7

Fourth Amendment right against unreasonable seizures precludes summary judgment, the Court will address the parties' additional arguments. Spring Valley and Narczewski assume, for purposes of their motion for summary judgment, that Mautino and Narczewski entered into an agreement to enable Mautino to demolish her building without first obtaining a demolition permit, erect a beer garden in place of the demolished building, and thereafter receive a liquor license for the proposed beer garden. They argue that the Alfanos have no evidence to show the alleged agreement between Narczewski and Mautino, to forego obtaining a demolition permit, was a proximate cause of their claimed property damage. *See Pepper*, 430 F.3d at 810 (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)) ("Under any theory, to be liable under Section 1983, the individual defendant must have 'caused or participated in a constitutional deprivation'"); *Hibma v. Odegaard*, 769 F.2d 1147, 1155 (7th Cir. 1985) (explaining that general principles of tort liability govern liability imposed under Section 1983). Defendants argue that the only purpose of the ordinance applicable to demolition of buildings is to make sure the City's property is protected by the procurement of a bond, an agreement that the applicant pay for any damage to City property and to hold the City harmless in the event of liabilities. Therefore, Defendants contend, the failure to obtain the demolition permit did not cause the damage to the Alfanos' building, and there is no evidence that they directed, controlled, or participated in the demolition of the Alfanos' building which allegedly did cause the damage.

The Alfanos respond that it is true that nothing in the demolition ordinance would have prevented the destruction of the Alfanos' building by Mautino's excavating contractor, but that does not immunize Defendants from liability where they initiated and conducted the destruction

of Mautino's building. They argue that Narczewski was the moving force behind Mautino's plan to demolish her building and erect a beer garden in its place. They point to Mautino's deposition testimony where she states that Narczewski approached her with the idea of the beer garden in order to bring people to Spring Valley. She further stated that city council members and Narczewski were on her premises on a daily basis before and during the demolition, that Narczewski continually assured Mautino that the building permit was taken care of, and that the liquor license was a done deal even before the demolition began.

In Narczewski's deposition, he testified that either he or aldermen notified James Clinard ("Clinard"), the engineer hired by Spring Valley, to take a look at Mautino's building prior to demolition. He further testified that he was not sure about the source of the discussions regarding Mautino's demolition activity, and that he had very limited discussion with Mautino about possibly tearing down her building. He further testified to one time when he told Mautino to see Donald Haun ("Haun"), Spring Valley's building inspector, about a demolition permit. Narczewski explained that there was also very little discussion about Mautino obtaining a demolition permit. There is a material issue as to whether Narczewski effectively directed or encouraged Mautino's demolition actions, making her demolition activity under color of state law for purposes of Section 1983. However, the Alfanos' Section 1983 claim must fail unless they can additionally show that Narczewski continued to encourage Mautino's demolition, knowing that damage to their building could result.

Defendants next argue that the alleged agreement was not "an agreement to deprive" as required under Seventh Circuit case law. *See Williams*, 342 F.3d at 785.. They state that the Alfanos have failed to present evidence or argument to establish that Narczewski's interaction

with Mautino was meant to, was intended to, or was understood to have any consequences involving the Alfanos. Defendants alternatively argue that even if they were negligent in causing damage to the Alfanos' building, the Alfanos' Section 1983 claim cannot be based upon a negligence theory. *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)) ("Section 1983 claims cannot be founded on negligence"). The Alfanos contend that Narczewski received Clinard's engineering report informing him of the common wall the day before the demolition,[8] and that an observer could see the buildings were close enough to be connected by a common roof at the rear of the properties. The Alfanos further contend that Narczewski's intentional disregard of the known fact of the common wall and the obvious risk that destruction of Mautino's building would result in damage to the Alfanos' building, was a causative factor in the damage to the latter's building. Defendants dispute that there is evidence to show the alleged common wall caused the Alfanos' building damage.

The causal link between Narczewski's conduct in allegedly encouraging Mautino's demolition activity without a permit and the damage to the Alfanos' building is certainly a tenuous one. The Alfanos have a Section 1983 claim only if a reasonable jury could infer that Narczewski had prior knowledge of the potential for damage to the Alfanos' building in the event of Mautino's demolition. That said, given the evidence in the record of Narczewski's alleged continual encouragement and disregard of the demolition ordinance, and the letter which he allegedly saw the day before the demolition, a reasonable jury could find that his alleged

---

[8] In his deposition, Narczewski testified that the issue of a common wall did not come up until after Mautino's building was demolished. Defendants further note that there is no evidence Narczewski received Clinard's April 23, 2007, letter/memo. Dft's Reply, p. 8, ¶18.

intentional disregard of risk of damage to the common wall caused damage to the Alfanos' building. Therefore, there is a genuine issue of material fact as to whether there was an agreement between Narczewski and Mautino which caused the deprivation of the Alfanos' Fourth Amendment guaranty against unreasonable seizures.

   B.   "Class of One" Equal Protection

The Alfanos additionally claim that Narczewski's alleged agreement with Mautino to suspend enforcement of the Spring Valley liquor ordinances and building code provisions deprived them of the equal protection of the laws because those provisions were enforced against them but were not enforced against Mautino. A "class of one" Equal Protection claim may be brought where: 1) the plaintiff alleges he has been intentionally treated differently from others similarly situated, and 2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant. *Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).[9]

Defendants argue that there is no proof the Alfanos were intentionally treated differently than others who were similarly situated. The first element of a "class of one" Equal Protection claim requires a showing that the plaintiff was "treated differently than someone who is *prima*

---

[9] Plaintiffs discuss the conflicting Seventh Circuit precedent regarding the second element of a class of one Equal Protection claim. *See* Response to MSJ, pp. 26-27. The Court need not address this issue because Plaintiffs are unable to establish the first element of their Equal Protection claim. *See Srail v. Village of Lisle*, 588 F.3d 940, 644 (7th Cir. 2009) (court did not need to address conflicting Seventh Circuit precedent where plaintiffs could not establish similarly situated comparators existed or that defendant lacked a rational basis for its decision).

*facie* identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see also United States v. Moore*, 543 F.3d 891, 987 (7th Cir. 2008) (quoting *McDonald*, 371 F.3d at 1002) ("Although this is not a 'precise formula,' it is nonetheless 'clear that similarly situated individuals must be very similar indeed'"); *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009). Defendants cite the Alfanos' interrogatory responses where the latter explain that Mautino was never subjected to an ordinance violation action for her violation of the building and liquor codes, whereas the Alfanos were subjected to an ordinance violation action when their building was damaged following Mautino's demolition of her own building. Even if Mautino's building was in need of repair or demolition at the time it was demolished, there is no evidence that she was cited for City ordinance violations during that time, or that she failed to timely repair or demolish at the direction of the City of Spring Valley. Accordingly, Mautino is not similarly situated to the Alfanos.

The Alfanos additionally list Walter Chonowski ("Chonowski") as similarly situated to them. Chonowski owned a building located 223 East St. Paul Street, Spring Valley. Chonowski's building was the subject of a state Petition for Access to Real Estate in order to conduct inspection pursuant to Spring Valley ordinance in 1996, a Complaint for Demolition or Repair in 1997,[10] a second Complaint for Demolition or Repair in 2005, and a Complaint for Administrative Search Warrant in 2005. Chonowski's building was eventually brought up to Spring Valley code a number of years after the City originally became involved. Defendants

---

[10] In the 1997 and 2004 Complaints for Demolition or Repair, Spring Valley explained that Chonowski's building was in violation of its Property Maintenance and Occupancy Code, that he was repeatedly notified to correct the deficiencies, and that Chonowski refused to correct those violations.

argue that there is no evidence cited to show that Chonowski was *prima facie* identical to Plaintiffs in all relevant respects.

The evidence in the record shows that Chonowki and the Alfanos failed to comply with the Spring Valley Property Maintenance and Occupancy Code, both parties failed to correct their violations, and so Spring Valley brought separate actions against them in order to enforce the Code. However, in the Alfanos' situation, they entered into a settlement agreement with Spring Valley, and when they did not timely comply with it, Spring Valley brought a motion to enforce the agreement to repair or demolish their building. The fact that the Alfanos and City of Spring Valley entered into a settlement agreement shortly after they were cited for violating the City Code precludes the Court from finding that the Alfanos are similarly situated to Chonowski, where it does not appear the latter entered into any similar settlement agreement with the City. Furthermore, it does not appear that the City proceeded against Chonowski in the same manner in which it proceeded against the Alfanos in terms of the state proceedings. The Alfanos are unable to show that they were intentionally treated differently from others similarly situated. Thus, it is unnecessary to consider whether there was a rational basis for the difference in treatment or illegitimate animus employed by Defendants against the Alfanos. Defendants are therefore entitled to summary judgment on the Alfanos' "class of one" Equal Protection claim.

## II. Plaintiffs' State Claims

Defendants do not address the Alfanos' state claims in their Motion for Summary Judgment. In their Reply brief, Defendants argue, in one short paragraph, that the only viable state law theory against them is vicarious liability, and that both state claims based upon that theory lack merit if the Alfanos cannot establish proximate cause to support their claims.

Defendants make no effort to apply law to the facts of record. Perfunctory and undeveloped arguments may be deemed waived and do not warrant consideration on the merits by the Court in resolving the present Motion. *See Finance Investment Co. v. Geberit AG*, 165 F.3d 526 (7th Cir. 1998) (finding a perfunctory and undeveloped argument to be waived); *Volovsek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 689 n.6 (7th Cir. 2003); *Indurante v. Local 705, International Brotherhood of Teamsters*, 160 F.3d 364, 366 (7th Cir. 1998); *Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998), *cert. den.*, 119 S.Ct. 890 (1999). Accordingly, the Court finds that by virtue of their perfunctory and legally undeveloped reply, a material question of fact remains which requires resolution at trial.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [#64] is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to the Alfanos' Section 1983 substantive due process claim, for the reason that their claim is more accurately one under the Fourth Amendment. The motion is additionally granted with respect to the Alfanos' Section 1983 "class of one" Equal Protection claim. The motion is denied with respect to the Alfanos' Section 1983 claim for Fourth Amendment unreasonable seizure and state law claims based upon respondeat superior and Section 9-102 of the Illinois Local Governmental Tort Immunity Act. The Court will contact the parties in the near future to schedule the Final Pretrial Conference.

ENTERED this 25th day of February, 2010.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge